Thank you. Presiding Judge Nelson, Justices Clifton and Smith. My name is Mark Nadeau and together with my colleagues Stan Panikowsky and David Onyshek from the law firm of DLA Piper, we represent Vantage Mobility. We request now two minutes for rebuttal. With respect to the argument today, there are many issues well briefed before you. We ask this court to reverse and remand for further hearings and discovery in keeping with the orders we believe you will enter here. First, we propose to address the errors in the analysis of specific and a fair opportunity to be heard arising from the wholesale denial of any discovery. Second, we address a clear error of law that drives the many failures in the legal analysis of claims ending in the improper dismissal of claims and the failure to acknowledge valid tort claim allegations. We conclude then by urging the court to grant the injunction as the trial court applied the wrong standards. Let us turn then to specific jurisdiction. First and foremost, the focus here is not on the acquisition agreement and the purchase agreement, the MPA as it's called. This is focused on the existing VMI dealership agreements deployed around the country. Counselor, if we're talking about specific jurisdiction, did you ever make this argument to the district court? We did, your honor. Where? Well, you'll find... Only thing I found, just let me give you some background. The only thing I found is that you had an argument concerning College Source versus Academy One and the district said it was a pre-Daimler standard and the district court, as far as I know, did not address the exceptional case, which must be addressed to get specific jurisdiction. You're correct. He did not address the exceptional case. Because you didn't argue it. No, I respectfully disagree. If we look in our motion for reconsideration, it is certainly there on specific jurisdiction. Okay, I'll look there because I didn't find it. Okay, and more to the point, Judge Smith, the fact is the judge addressed it. So the judge either addressed it sua sponte and was wrong or the judge was responding in part to our arguments, which I think is more the accurate reflection of the record. With respect... I thought it was interesting that he did not address the exceptional case. And the reason he didn't address it in my book was you didn't ever make the argument, but I'll look at what you said and we'll see. Yeah, please do because you're correct. He didn't address the exceptional case. He stuck primarily on general jurisdiction, but in his order, responding to our motion for reconsideration, there's a specific section on specific jurisdiction. And on reflection, I think you'll find he got it wrong. How did he get it wrong? First of all, he's talking about the MPA and Washington. He's failing to realize what you just mentioned on the Torres case, which is the court's responsibility to look at the marketplace as a whole. Here, we're talking about two industry competitors where Braun is the monopolist, and VMI is a significant entrant and operator in that marketplace. But the contracts that are at issue are the VMI dealership agreements, if Braun can attack those. If Braun can stop... I'm not sure this is on where the plaintiff is located. I mean, there's no question, but the dealerships involved here are not in Arizona. They're in the state of Washington. Is that correct? No, we disagree, Judge Clifton. The dealerships that are affected are in Washington. Isn't that correct? No. Okay, tell me where that's wrong. If you tell me that the impacts are in Arizona, I'm telling you you're not answering my question. So tell me where I'm wrong. No, the impact is national. We need to get this... Stop right there. You're trying not to answer the question. The simple question I'm posing, are the dealerships affected here located in the state of Washington? The dealerships that were acquired were located in the state of Washington. Okay, so that's the starting point. You're trying to translate this into... Well, but the plaintiff is elsewhere, and the plaintiff is affected. In effect, trying to change the specific jurisdiction standard by saying, where's the plaintiff located? And I don't think that's what specific jurisdiction is about. No, I would agree with you on that. I don't think that's what it's about. But the issue is, where are the contracts? The contracts are spread throughout the country with a dealership network involving VMI. And if you attack... Part of this network, well, that state's got jurisdiction, specific jurisdiction over this, because somehow they're implicated. Well, now... That is not right. That is not right. You're correct. But that's not all you have here. First of all, we came on pleadings alone. Remember, we were not allowed any discovery. We came on pleadings alone. And you didn't, it appears to me, you didn't ask for discovery that pertains to this issue. But well, and did not tell the district court that this premature discovery you were seeking was necessary for this issue. But that's another issue. I'm more concerned right now about specific jurisdiction. Okay. Let's just pause for a moment and go with the three standard tests that you look at, which is whether they purposely directed activities and targeting at Arizona. We do think that occurred here because they are intending to attack VMI as a competitor, not merely acquire a dealership in Washington, where they already have large dealership networks in Washington. It wasn't about that. It was about something else. Secondly, the second standard is the claim must be one that arises out of or relates to the jurisdictional cases we've been looking at both general and specific. There is not one that says the court should ignore the facts that are developed with respect to general jurisdiction. In this analysis, the conduct we're talking about indeed arises out of bronze activities within the state of Arizona. It has eight different dealerships operating within Arizona. It is licensed in Arizona. It has service and process in Arizona. And it in fact, meets in this case, the Calder test. Go back to your phrase arising out of. I hear you that Braun has activities in the state of Arizona, but I don't hear you as to how what's alleged in this case arises out of the contacts they have with the state of Arizona. They're not alleged to have connived this scheme within Phoenix or Tucson or wherever the distribution center is. Assume with me now that if we had discovery, we could demonstrate that the very first meeting on this transaction occurred in Tucson, Arizona. Assume further, if you had any internal emails from Braun and you have none or any internal emails from Kersey and you have none or Kersey's members and you have none or arch and its members and you have none that you would be able to demonstrate that there was a tactic involved here, which was of a dealership in Washington. I looked at your first amended complaint and it doesn't allege what you started with in terms of the scheme actually arose in Arizona. It does allege what you've come back to, but that's simply the question I put to you a few minutes ago, which tries to turn this into an effects test. That is because plaintiff is located in Arizona. That's enough to give Arizona jurisdiction over Braun. I have to tell you, I see no authority that supports that understanding of a specific jurisdiction. Assume that number one exists and that there has been some discovery since this came up on appeal. Just assume it for the sake of this discussion. We can't assume it, isn't that the problem? Where's that in the complaint? We have to determine jurisdiction based on the allegations in the complaint. The complaint does have every allegation I mentioned, save the first. We have said, and we mean it here, that a complete denial of any discovery, and no ability to amend post decision, and no ability to conduct discovery on jurisdiction is beyond the pale prejudicial here. There is a policy by this trial judge that he does not like to have any discovery prior to a preliminary injunction that was said to us that shows up in Now, that, you will appreciate, turns the preliminary injunction into a TRO, because now we show up with no discovery whatsoever when a secret deal has occurred, when a transaction occurred. We got the sale documents in part, not in their entirety, three days before the hearing. That was part of a disclosure obligation that had existed since July, but wasn't, in our view, complied with, but it wasn't discovery. We had none. So, we do have cases around the country. The Third Circuit has addressed this with respect to injunctions, and has done so in the Raymer versus Lannert-Toyce case, and it has said, in that circumstance, number one, the decision at the injunction hearing is akin merely to a summary judgment styled decisions getting made. Worse, because it's just akin to a motion to dismiss, then all facts pled must be taken as true by the court. That didn't happen here. The court went beyond that. Then, the Lannert-Toyce case says, regardless of whether, and Judge Clifton, this does go to the point you're making with me, says, regardless of whether the parties asked for the discovery, they're entitled to it before you would enter judgment on the jurisdictional matter, and that's what the Third Circuit has found. This court, in other circumstances, has also said that the discovery prior to a preliminary injunction hearing is appropriate. It's the unusual case, and to me, it collapses. But just so we're, I see you're running out of time. That we're reviewing. You've challenged that separately, and that you're reviewing. We review that for abuser discretion, right? I mean, you're not suggesting that we adopt a per se rule that it is always abuser discretion not to allow jurisdictional discovery or any expedited discovery before a preliminary injunction. No, no, no. We agree with you on that point, but we would say, this is the case. In other words, this is the case where an abuse of discretion occurs, because we're not allowed to amend at all, and we're not allowed to conduct any discovery, and we were prohibited on that score prior to the hearing. If I could... Do you want to reserve for rebuttal, or you wanted to reserve a couple of minutes? I did, Your Honor. You're correct. I will say one more thing and pause. Go ahead. Take a look at page eight, which is the record at page 21, which is the judge's order, where he says, this is just a simple sales agreement, and he's trying to distinguish between the Nissan case involving dealership agreements and consents, which also cites to Van Ness case in the Ninth Circuit and also cites to Caldwell in the Ninth Circuit. There he makes a grand and awful legal error by throwing out the window decades of law about dealership agreements and the fact that they create a special and quasi-fiduciary relationship. Thank you. I'll reserve what's left. Thank you, counsel. Mr. Jacobs. Good morning, Your Honors, and thank you for your time today, Andrew Jacobs, for Kirsten Mobility and Braun. Back to Judge Clifton's question, among the many excellent questions I'd like to follow up on, what's Arizona got to do with it? Well, if we look at what they gave Judge Tucci to work with, basically nothing. And I would really ask the court to look at the Westland Declaration that was submitted in support of the preliminary injunction and their order that they would have had Judge Tucci enter if they had won the preliminary injunction hearing. Those are ER 335 to 38 and ER 382 to 388, and they have nothing to do with Arizona. I mean, it sort of starts and stops right there. I mean, the Westland Declaration is purely and simply about a Washington state competitive injury, which is what the district court correctly discerned was in play here and they've accused of occurring wrong here. And likewise, the order they would have had the district court enter at ER 382 to 388 only touches Arizona in so much as it says that their pre-existing contracts, before Arch was on the scene, had an Arizona forum selection clause, which is true. But all the conduct in the order they would have had Judge Tucci enter has nothing to do with Arizona whatsoever. So taking the arguments then in the order in which they flow, first, I guess they're not really pursuing general jurisdiction, which I think is appropriate. If there's general jurisdiction here, then there's general jurisdiction over every large company in America in any state in which it does business. And the very catalog of factors that they ran through, you know, we have a registered agent, we have some employees, we have some operations. That was what led the court in Daimler, led Justice Ginsburg to write that such exorbitant exercises of all purpose jurisdiction would scarcely permit an out-of-state defendant to structure their primary conduct with some minimum assurance as to where it will and will not be sort of called into court. So there really is no general jurisdiction here, and I think they wisely don't pursue that, so I won't belabor that point further. Specific jurisdiction, which is admittedly a little more analytically complex, nonetheless boils down to a distinction where, if I understand counsel's argument correctly, counsel's sort of taking the opposite side of the case they correctly cite in their brief, which is Walden versus Fiori, of course, is that the mere fact that the plaintiff is found in a jurisdiction doesn't suffice to establish that specific jurisdiction. Put another way, in more contemporary parlance, it's not all about them. The inquiry in specific jurisdiction is about us. It's about our behavior and our conduct, and not our conduct toward a party, as Walden versus Fiori says, but conduct toward a forum. And so they're saying that there's conduct directed toward a membership interest of a Washington LLC in the state of Washington. So that really doesn't hold water. Mr. Jacobs, can I ask you this? Assuming there's no connection here to Arizona except for, and what I think I heard was the intent was to cause harm in Arizona, is that not enough to get you into jurisdiction? I mean, you say it's only on the conduct that your client conducted, but if their intent was to cause harm in Arizona, and there is evidence to that effect, would that be enough? As far as the Rule 12 piece of this, I'd be talking about allegations of harm in Arizona. And as far as the piece that we'd be talking about specific proofs of harm in Arizona, I would say that, Judge Nelson, if you had allegations of harm to be caused in Arizona, that would be both a very different complaint and would get you closer to the line of specific jurisdiction. I think that's a very good point. I think, unfortunately here, from their standpoint, at least, their complaint talks, as the colloquy was just with your honors in the first five minutes, about nationwide. They talk about nationwide and they ask you to extrapolate Arizona from nationwide. I agree, but it sounds like, I don't know how much of this exists, and I know we can't consider it because it's not in the record, but if there were some evidence that had been discovered where there was actually an intent to cause harm in Arizona, your suggestion is that might be enough to create specific jurisdiction here. I agree that's not in the complaint. I don't see it in the record right now, but should they not be allowed to amend their complaint and make that allegation if, in fact, additional information has come to light? Well, abstractly, your honor, they should be allowed to amend their complaint timely to bring forth allegations where discovery has shown an intent to cause harm in the market of Arizona. I believe that the deadline to seek to amend the pleadings has, in fact, expired, but I'm answering the question the way Judge Nelson, your honor, framed it. So absolutely, if they found evidence we're trying to cause harm in the state of Arizona, that would be reasonable for Rule 15 to proceed from there. Well, what if they haven't had any discovery to find that evidence? Well, Judge Clifton, they have had discovery up to the time of the end of discovery. So I think, Judge Clifton, are you talking more about harm to them from not having any discovery before the P.I. hearing or are you talking about throughout discovery? That's correct. Before, and we're dealing here with a motion to dismiss, so discovery may come later and provide an opportunity, but they're complaining that they didn't have the opportunity they should have had to get to those materials. Right, right. I understand, Judge Clifton. Absolutely. So based on that, I would say their failure to request jurisdictional discovery is key because they requested just sort of general merits discovery. And it's very common to request jurisdictional discovery, but they are, for better and for worse, the master of those things. And so I think that there's, this sort of reminds me a little bit of, you know, in a basketball game, when you get a little bit touched and the guy goes flying backwards. I mean, Judge Tucci wasn't asked to give them jurisdictional discovery before the motion to reconsider stage. So it's not assignable as error to the district court. They didn't get what they didn't ask for. It's not his fault. And second of all, they didn't specify... Let me ask you this. If they had asked for jurisdictional discovery, would you believe it would have been abuse of discretion for the district court to have denied it in these circumstances before the preliminary injunction? In these circumstances. So it depends on the request that they failed to frame, not to be accusatory about it, Your Honor, but... No, I understand I'm asking a hypothetical question, but I'm interested in the general theory here. Well, I think the general theory of it is if you can show that there's a reason to get jurisdictional discovery and it's narrowly tailored and you can explain why you want it and what it does, that would be the way to make that request that they did not make. So if they had a properly framed one, I think, again, that comes a lot closer to the line, but I'm not seeing in this record, and I'm not seeing even in my own understanding of it outside of court, because going to your prior question, Judge Nelson, if you listen to what Mr. Nadeau was saying, counsel was saying, something taking place in Arizona. Your question is different. Your question is harm directed at Arizona. I don't know anything in this case that's about harm directed at Arizona from my modest familiarity with it since the record was locked for your honors. Harm directed at Arizona, they did not pursue the inquiry. They shouldn't pursue the inquiry if they believe it's error, but here there's a lot of moving goalposts and assigning blame to the district court for what the district court was never asked to do. I think there's no better illustration of that than if you look in the record. It's a page that I think is the most important in the record is SCR 328, because the entire appeal is sort of an enormous emanation from this one page of briefing. It's in the record. It's the fifth filing in the docket, docket five. They move for a preliminary injunction, and they basically spend about a page and a quarter explaining why they have a likelihood of success on the merits. Of course, that one stilt is what the enormity of this litigation is built on, is this one and a half pages of likelihood of success on the merits. Again, I think there's a little bit of blaming the district court here for things the district court wasn't fairly given an opportunity even to do for plaintiff. I mean, the showing at page ER 328 and the five or six lines before and after it is just simply insufficient, even if everything on the page there is sort of taken seriously to show likelihood of success on the merits such that they should have prevailed on a preliminary injunction. And before we get too close to the end of the time, I also am really struck by the fact that they went so far out of their way when seeking reconsideration in front of the court to avoid invoking rule 59. If this case is one where the appeal was timely brought, that would amount to a rule that any motion for reconsideration, no matter how denominated or incorrectly denominated, is automatically a tolling motion. And that is not consistent with the cases that they have cited to this court. It is not consistent with Sierra Online. In Sierra Online, the court said a motion to reconsider may be made under rule 59. Maybe. And it said in the prior sentence, the motion here did not state the particular rule under which it was filed. That is the context in which Sierra Online said, well, you know, they did not say a rule. It could have been a rule 59. We are going to construe it to be a rule 59. That is not true here. It is also the other case they cite, AC&S versus Multnomah County. But if we look at Shapiro versus Paradise Valley, there we say we have consistently held that if a rule 59 is served within the allotted time, and it could have been brought under 59E, it tolls the time for appeal, although it did not expressly invoke 59. Then when we look at Sea Ranch Association versus California Coastal Zone, we see again where we say nomenclature is not controlling. So therefore, I am having a tough time why we would not get to it under 59. I very much take your point, Your Honor. This is a case where it was affirmatively misdenominated and it was filed under the local rules time deadline, which suggests it was not the 28-day time period of rule 59. But there are definitely cases where it can be reconstituted under different rules, Judge Smith. That is absolutely right. So I will proceed a pace away from that argument. Looking at the key, though, if we are going to look at the merits and if we are going to look at the likelihood of success on the merits, the location policy is simple and easy to parse. And we can see that there was not a cessation of location here. And so that provision on its face simply does not apply. There is not a lot of complexity. I think the action in the analysis, to the extent there is any, comes up with whether or not CURSI is centered to the control policy. So I would like to direct a few remarks to that because that was, I think, properly subject of a little bit more analysis than some of these other points. And when we look at that, it's, there's a, there's an issue which I'm surprised you haven't hit before. And that is, what is my standard of review on this preliminary injunction? Well, absolutely, Your Honor. And I was winding to that as we approach that issue, but I'll take it in the order Your Honor poses. I mean, the question here is whether... I mean, even if we don't give you credit for where you're going, if there's a reasonable argument to be made, it seems to me that under a standard for preliminary injunction, there's no abuse. And Your Honor, that's exactly why I was trying to move before closing to the evidence about assent to the control policy, because if the court's applying the law right under the standards we cited to the court and the basic law of preliminary injunction here and a contract law is simple and straightforward, then the question is whether there's a plausible view of the facts here. And absolutely there is. The question isn't whether it's always going to be true that you wouldn't succeed on the merits. The question is whether Judge Tucci could fairly read this record to say there was not a likelihood of success on the merits. And that standard is one that flows downhill in favor of our clients. And the evidence on the control policy, there's a reasonable view that Kersey didn't assent to the control policy. Can he argue the reverse? He could argue the reverse. He could point to a fact here or there and say, but I sent them an email. To which we would say, there's a sound evidentiary basis grounded again, Judge Smith, in the standard you just pointed us back to. And Kersey didn't see control policy until Arch's lawyers presented it in the time of the sale. It was buried in an email and they tout this meeting in Washington State. The meeting in Washington State didn't provide the control policy. There was a term policy that said there might someday be some new policy. That's not assent. You're not going to find I blasted out an email in Corbin on contracts as a method of mutual assent because it's not there because that's not mutual assent. And at the end of the day, as far as the place where one could reverse in a PI, that would be if you have legal error. And as far as this key point about the assent to the control policy, the law we cite is unrebutted. So there's no question in this record that there's even a possibility of legal error by Judge Tucci in success on the merits on this point. We cited Giselle versus Copens, which is you have to assent to a change in the contract terms. And we cited the Arizona case that says even where a contract says that you get to modify unilaterally, that's not true. And you need that assent. And their reply drops that their reply does not address those arguments. And the only thing they give you is a district of Arizona unpublished case, which in turn cites Illinois contract law. So it's unrebutted in this record that there's not a legal error on this key point. The facts are amenable of the interpretation that was found by the court. You can't torturously interfere with your own contract. That was a sound holding of his honor in the case below. There's no unfair competition with no Arizona nexus here. And so for reasons, especially grounded in the way your honors find a preliminary injunction, the standard of review, the fact that there's not a clear legal error here, the fact that the facts were amenable of the interpretation, the district court amended to it. And again, the discovery, the discovery is generally within the sound discretion of the trial court. And Judge Tucci was right. I mean, when you look at this, their complaint attaches the agreements, the core wrong. They allege is that, you know, they've got these agreements and then this dealer went behind their back and did something they didn't like. That's all in the complaint. That's basically all that's actionable here from their point of view. At the end of the day, we can talk about jurisdictional facts and law. That's the core allegation. It's a basic contract issue that has been dressed up into an art review, respectfully, way too many filings. Judge Tucci was right. You didn't need to have full merits discovery before concluding this. That's clearly not an abuse of discretion under circuit law. And unless your honors have further, we would thank you for your time and respectfully rest. Okay, thank you. Thank you, Your Honor. Counsel, we'll give you a minute on rebuttal. Thank you, Judge. Three quick points. Assent. First of all, the judge dealt with it as a new contract, whether that's right or wrong is a matter of law rests with you. But if it's a new contract, how you get assent is different than tying it back to the dealership agreements and silence. The judge mentioned silence was purchased by Braun with an NDA. They kept him quiet. Eight months passed until the actual closing. What happened in the interim? This court was not permitted to discover it, and we did not have discovery on it either. Secondly, actual allegations. Look at paragraphs 18, where we allege the intended effects of Braun's conduct undertaken with actual knowledge were to cause damage to VMI in the state. Actual intended. We also say, with respect to paragraphs 54, 55, and in the latest instance of Braun's unrelenting efforts over the years to choke out competition through coercion directed at VMI. So it's not merely the dealership agreements that are mentioned. Lastly, the order of discovery. If you look at our request for expedited discovery, it goes to Braun's involvement in the transactions. We were prohibited from discovering any of that. We both for an excellent argument, and the case is now submitted, and that concludes the arguments for today.
judges: Clifton, N.R. Smith, Nelson